# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| Plaintiff, | : | Case No. 3:12-cr-00058 |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| MOHAMED FALL, | : | |
| Defendant. | : | |

## DECISION AND ORDER

The Defendant, Mohamed Fall (Mr. Fall), is charged with one count of assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). During his initial appearance on May 9, 2012, Mr. Fall pled guilty to the sole count pursuant to a plea agreement. The Court ordered an expedited presentence investigation (PSI). A sentencing hearing was set for August 8, 2012[1]. During the August 8th hearing, but prior to sentencing, Mr. Fall requested to withdraw his guilty plea. The Motion to Withdraw Guilty Plea (the Plea Motion) was filed on August 13, 2012 (Doc. #19). The Government filed a response in opposition on August 20, 2012. (Doc. #20). An evidentiary hearing regarding the Plea Motion was held on September 7, 2012 and continued on October 9, 2012. Based upon the facts set forth by the parties, the Plea Motion is hereby denied.

---

[1] Rescheduled from August 1, 2012.

## I. Statement of Facts

During Mr. Fall's initial appearance, the facts of the case were stated on the record as follows:

> On February 27th, 2012 Montgomery County Sheriff's Officer Deputy Bemis conducted a traffic stop on Interstate 70 in Montgomery County, Ohio. In the course of the traffic stop, Bemis identified the passenger as Mohamed Fall and ran a records check which revealed that Fall was not a United States citizen and was administratively ordered removed from the country and thus was not currently authorized to be in the United States. Deputy Bemis then contacted Homeland Security Investigations Special Agent Kearns for additional information. It was learned that Fall failed to report to New York for self deportation and is (inaudible). In the course of their official duties, Special Agent Kearns and Special Agent Brian Turk responded to the traffic stop location. They confirmed the identity of Fall and advised that he was being arrested and sent to the immigration (inaudible). As Fall was being transferred from Montgomery County to the Butler County jail, Fall threatened SA Kearns several times during the trip. In addition, Fall spit on the floor of the vehicle during transportation and on one occasion Fall actually spit at Special Agent Kearns who was driving the vehicle. The spit sprayed Special Agent Kearns and landed on the front windshield.

(Tr. of Proc. 6:11-7:9).

A Criminal Complaint was filed on March 28, 2012, alleging Mr. Fall's conduct was in violation of 18 U.S.C. §§ 115(a)(1)(B) and (b)(4). (Doc. #1). However, the Information filed on May 3, 2012, charged Mr. Fall with one count of assaulting, resisting, or impeding certain officers or employees, in violation of 18 U.S.C. § 111(a)(1). (Doc. #12).

During Mr. Fall's initial appearance, the parties confirmed that they had reached a plea agreement. (Tr. of Proc. 3:14-19). Mr. Fall proceeded to enter a plea of guilty to the charge of assaulting a federal officer, which the Court accepted

as knowing and voluntary. (Id. at 8:11—9:1). The Court also ordered an expedited PSI. (Id. at 9:4-6). U.S. Probation Officer Amy Albright completed the PSI report and copies were submitted to all parties in compliance with Local Rule 32.1. (S.D. Ohio Crim. R. 32.1). Prior to Mr. Fall's request to withdraw his guilty plea, no objections were raised to the PSI report relevant to the issue currently before this Court.

During the sentencing hearing, Mr. Fall's attorney, Arthur Mullins (Mr. Mullins), stated that Mr. Fall wished to withdraw his guilty plea. (Doc. #18). In the subsequent Plea Motion, Mr. Fall stated that he "taught himself conversational English, [but] he did not understand the legal language contained in the Bill of Information… nor did he fully understand the plea colloquy." (Doc. #19, Page ID #37). Mr. Fall explains that his limited grasp of the English language led him to plead guilty at the advice of Mr. Mullins, though he did not understand what he was pleading to. (Doc. #22; Doc. #23). Mr. Fall was provided with a French language interpreter for the subsequent evidentiary hearings. Mr. Fall asserts that he is not guilty of the offense charged and requests to withdraw his guilty plea and proceed to a jury trial. (Doc. #19, Page ID #37).

## II. <u>Legal Standard</u>

Once a court has accepted a defendant's plea of guilty, it may be withdrawn prior to sentencing only if the defendant "can show a fair and just reason for

requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). Prior to accepting a defendant's guilty plea, a court must "verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007) (citing *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005)); Fed. R. Crim. P. 11.

A guilty plea is only valid if entered by the defendant "knowingly, voluntarily, and intelligently." *Brady v. United States*, 397 U.S. 742, 748 (1970). The requirements of Rule 11 assist the court in determining that the defendant's guilty plea was valid. *United States v. Vonn*, 535 U.S. 55, 58 (2002). A court has made a proper determination regarding the validity of a defendant's guilty plea where the Rule 11 requirements have been adhered to, the defendant has sufficiently responded to the court's inquiry, and the court has no reason to believe the defendant's plea is otherwise invalid. *See United States v. Lalonde*, 509 F.3d 750, 761 (6th Cir. 2007); *see United States v. Gardner*, 417 F.3d 541, 544 (6th Cir. 2005). If a court "scrupulously follow[s] the required procedure [under Rule 11], the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)). A defendant's affirmative responses to

the court are sufficient to establish that the defendant pled guilty knowingly and voluntarily. *See Gardner*, 417 F.3d at 544 ("[T]here is no requirement that in order to rely on a defendant's answer in a guilty-plea colloquy to conclude that the defendant pleaded guilty knowingly and voluntarily, those answers must be lengthy and all-encompassing; a straight-forward and simple 'Yes, your honor,' is sufficient to bind a defendant to its consequences." (quoting *United States v. Walker*, 160 F.3d 1078, 1096 (6th Cir. 1998)).

### III. Discussion

Rule 11(d) offers a defendant the opportunity to withdraw a "hastily entered plea made with unsure heart and confused mind… not to… obtain a withdrawal if he believes that he made a bad choice." *Dixon*, 479 F.3d at 436 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991).

The Sixth Circuit has adopted a seven-factor test to determine whether a defendant has shown "a fair and just reason" for why the court should allow a guilty plea to be withdrawn. *Id*.

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence of) a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id*. (citations omitted)

### 1. The Amount of Time That Elapsed Between the Plea and the Motion to Withdraw It

A lengthy delay between entering a guilty plea and requesting that the plea be withdrawn will weigh against the defendant. *Id.* Mr. Fall pled guilty during his initial appearance on May 9, 2012 and did not request to withdraw his plea until his sentencing on August 8, 2012. Ninety-two days elapsed before Mr. Fall chose to withdraw his plea. The Sixth Circuit Court of Appeals has upheld many cases that found shorter intervals of time an impermissible delay. *See United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (sixty-seven days); *see United States v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five days); *see United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (thirty-five days). Absent a valid reason for the delay or a change in circumstances, this Court finds no reason to allow a defendant three-months to reassess his decision to plead guilty, only to withdraw the plea at sentencing. This factor weighs against Mr. Fall.

### 2. The Presence (or Absence) of a Valid Reason for the Failure to Move for Withdrawal Earlier in the Proceedings

A defendant may withdraw a guilty plea prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). However, the "fair and just reason" is substantially weakened if the defendant was aware of issue at the time he entered his guilty plea and failed to mention it. *See United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987). The only explanation

Mr. Fall provides for failing to move for withdrawal of his plea earlier is that he did not understand the consequences of entering a guilty plea until the PSI report was translated for him. (Doc. #22). This explanation is problematic for numerous reasons. First, it does not explain why Mr. Fall waited until the day of his sentencing hearing to request that his plea be withdrawn. Nor does it explain why Mr. Fall made no attempt to request the assistance of an interpreter at an earlier point in the proceedings. A language barrier is an impediment that one would be aware of and would not take lightly during a criminal proceeding. The fact that Mr. Fall appeared to have no difficulty understanding the proceedings, made no mention of the issue until his sentencing, and in fact assured the Court numerous times that he understood the matters addressed during the plea colloquy, significantly weakens the credibility of his argument.

Furthermore, a defendant's reconsideration of a guilty plea upon the realization "that he made a bad choice" is at odds with the purpose of Rule 11. *See Dixon*, 479 F.3d at 436. On cross-examination, Mr. Fall testified that "Before the PSI showed up, I didn't understand what I was risking. But when it showed up then I understood what was the risk." (Doc. #22). However, during the plea colloquy, this Court informed Mr. Fall of the maximum sentence and went to great lengths to ensure that he understood and accepted the consequences. (Tr. of Proc. 2:7-16). Mr. Fall affirmed that he understood and proceeded to enter his guilty

plea. Id. Furthermore, the fact that Mr. Fall reassessed his decision and concluded that he had "made a bad choice" after seeing the PSI report and the recommended eight-month sentence is not a "fair and just reason" to withdraw his guilty plea. *See Dixon*, 479 F.3d at 436.

Mr. Fall had ample opportunity to raise any issues or concerns he may have had. His choice to do so only at the eleventh-hour with no legitimate reason for the delay weighs heavily against him. In light of the circumstances, this Court finds no reasonable justification for Mr. Fall's three-month delay in withdrawing his plea.

### 3. Whether the Defendant has Asserted or Maintained his Innocence

Mr. Fall entered a plea of guilty, which this Court accepted as knowing and voluntary. (Tr. of Proc. 8:18-9:1). When asked if the recitation of the facts read aloud during the plea colloquy were accurate, Mr. Fall responded in the affirmative. (Id. at 7:10-15). The first mention of Mr. Fall's innocence came at his sentencing when Mr. Mullins informed this Court that Mr. Fall wished to withdraw his plea. (Doc. #18).

The Plea Motion states that "Mr. Fall adamantly denies assaulting anyone." (Doc. #19, Page ID #37). During the evidentiary hearing, Mr. Fall reiterated his contention that the facts were inaccurate. For example, after hearing the facts read aloud once again and translated to him in French, Mr. Fall responded in English

8

that they were not true. (Doc. #22). Mr. Fall now alleges that he responded affirmatively to the Court's questions during the plea colloquy without understanding what he was agreeing to. (Doc. #22 & #23). However, on cross-examination, Mr. Fall repeatedly contradicts this very allegation, by stating definitively that he never lied when addressing the Court. (Id.). Mr. Fall states that, during the plea colloquy, he was simply responding to the Court's inquiries according to Mr. Mullins' advice. (Id.). Mr. Mullins' advice to plead guilty, which Mr. Fall admits to scrupulously following, was provided in English without the assistance of an interpreter. (Id.) Furthermore, Mr. Fall repeatedly denies that any of the answers he provided during the plea colloquy, all of which affirmed the accuracy of the facts, the sufficiency of his understanding, and the matter of his guilt, were false. (Id.).

Given Mr. Fall's valid guilty plea and his inconsistent testimony during the evidentiary hearing, this Court finds that this factor weighs against Mr. Fall.

### 4. The Circumstances Underlying the Entry of the Guilty Plea

As previously stated, a court's adherence to the requirements of Rule 11 serve as a safeguard to ensure that a defendant's plea is knowing and voluntary. *See Lalonde*, 509 F.3d at 761. Mr. Fall pled guilty to the assault charge during his initial appearance before this Court on May 9, 2012. Prior to accepting Mr. Fall's plea, the Court appropriately advised Mr. Fall of his rights and ensured that his

plea was made knowingly, voluntarily, and intelligently. *See* Fed. R. Crim. Pro. 11(b)(1); *see Brady*, 397 U.S. at 748. Mr. Fall affirmatively stated that he understood his rights, that the factual basis for the plea was accurate, that he was not under the influence, that he had not been coerced to plea, that he understood the consequences of his plea, that he was satisfied with the services of his attorney, and that he was in fact guilty of the offense charged. (Tr. of Pro., 3:22-8:18). The Court accepted his guilty plea, finding that "the Defendant [was] fully competent and capable of entering into an informed plea. He underst[ood] the nature of the charge, the consequences of the plea… [and] the plea of guilty [was] knowing and voluntary." (Id. at 8:20-9:1).

Furthermore, this Court observed nothing to suggest that Mr. Fall did not understand the proceedings. Nor did Mr. Fall himself raise the issue. Given Mr. Fall's repeated assurances that he understood and the Court's strict adherence to the requirements of accepting a plea under Rule 11, the circumstances underlying the guilty plea weigh against Mr. Fall.

### 5. The Defendant's Nature and Background

Mr. Fall is originally from the country of Mauritania and is not a citizen of the United States. (Doc. #1, Page ID #4). In 2008, Mr. Fall was given a Final Order of Deportation, which he appealed. The appeal was dismissed in 2010 with

an order of voluntary departure. Id. Mr. Fall failed to report for self-deportation in New York, making him an absconder and fugitive wanted for deportation. Id.

English is not Mr. Fall's first language, though he has stated on numerous occasions to being conversational, at the very least. (Doc. #19, Page ID #37; Doc. #22; Doc. #23). In addition, Mr. Fall has lived in the United States for approximately a decade and is in a relationship with the mother of his child. Id.

Even if Mr. Fall did not understand "legal language," he admits to being conversational. When questioned by this Court regarding whether or not he understood his rights, the charges against him, and the consequences of his plea, Mr. Fall could have expressed his confusion without resorting to "legal language" simply by saying "no."

Furthermore, the statement of the facts read during the plea colloquy, which Mr. Fall affirmed were accurate, contained no legal language that would hinder a "conversational" English speaker's comprehension. This is particularly true of the final sentences, which outline the actual offense with which Mr. Fall is being charged.[2]

Finally, difficulty comprehending legal language and concepts is not exclusive to foreign language speakers. As long as Mr. Fall has basic English conversation skills, which he admits that he does, any confusion regarding the law

---

[2] The facts, as they were read during the plea colloquy, can be found in Section I of this Decision and Order.

could have been clarified by his counsel or the Court upon his request.  Mr. Fall never made such a request, nor did he request an interpreter until the day of his sentencing.

This Court had the opportunity to address Mr. Fall and witness his demeanor first-hand on multiple occasions.  At no point was there any concern regarding his ability to understand the proceedings or the validity of his guilty plea.  Mr. Fall did not express any confusion, request any clarification, or seek the assistance of an interpreter.  This Court is not persuaded by Mr. Fall's claim that he lacked such a fundamental understanding of the proceedings that his guilty plea should be withdrawn.  Mr. Fall's nature and background do not support his argument.

**6. The Degree to Which the Defendant has had Prior Experience with the Criminal Justice System**

Mr. Fall has been a criminal defendant in New York state court proceedings on three separate occasions after being arrested for selling counterfeit goods.  (Doc. #23).  The first two instances, which occurred in July and November of 2004, resulted in convictions for disorderly conduct.  (Id.).  His third conviction, in June of 2005, was for trademark counterfeit and resulted in Mr. Fall spending five days in jail.  (Id.).  In each case, Mr. Fall had the assistance of court appointed counsel and an interpreter.  (Id.).

Mr. Fall has also been involved in extensive immigration proceedings, ultimately resulting in an order of voluntary departure, which Mr. Fall failed to comply with. (Doc. #1, Page ID #4).

Mr. Fall has sufficient experience with the criminal justice system to be familiar with the process and the options available to him. Most importantly, Mr. Fall has been charged with a crime on three prior occasions and each time he had the assistance of an interpreter throughout the proceedings. (Doc. #23). This indicates that Mr. Fall is aware of the option to have an interpreter present. Even if Mr. Fall was provided with an interpreter in the past without having requested one, it is unlikely that he struggled throughout the proceedings in the instant case without even inquiring whether an interpreter was an available option for him. Mr. Fall's previous experience with the criminal justice system significantly weakens his argument for why this Court should allow him to withdraw his guilty plea.

**7. Potential Prejudice to the Government if the Motion to Withdraw is Granted**

Until a defendant has shown a "fair and just reason" to withdraw his plea, "the government is not required to establish prejudice." *Spencer*, 836 F.2d at 240. However, "the district court may consider potential prejudice in exercising its discretion in considering the motion." *Id*.

Mr. Fall has requested to withdraw his guilty plea and proceed with a jury trial. (Doc. #19, Page ID #37). The Information filed in the instant case charges

Mr. Fall with a misdemeanor for assaulting an officer in violation of 18 U.S.C. § 111(a)(1). (Doc. #12). The government has expressed their intent to indict Mr. Fall for a felony offense if his guilty plea is successfully withdrawn. (Doc. #22). If this Court were to grant the Plea Motion, the government would be faced with the task of preparing for trial, after having already engaged in plea negotiations and an evidentiary hearing with regard to the Plea Motion. However, this Court finds no reason why trial preparation at this point would prejudice the government. This factor weighs in favor of Mr. Fall's Plea Motion.

## IV. **Conclusion**

Mr. Fall has failed to show a "fair and just reason" why this Court should allow him to withdraw his guilty plea. An application of the seven-factor test utilized by the Sixth Circuit supports this conclusion, as six of the factors weigh against granting the Plea Motion. The Court's strict adherence to the requirements of Rule 11 ensured that Mr. Fall's guilty plea was knowing and voluntary. Mr. Fall's repeated assurance that he understands the plea colloquy, in addition to his demeanor observed by this Court weakens Mr. Fall's argument that he did not understand the Information and the plea colloquy. Furthermore, Mr. Fall failed to request an interpreter until after he saw the PSI report and the recommended eight-month sentence. This timing leads the Court to believe that Mr. Fall's request to withdrawal his plea is based on his belief that he has "made a bad decision" and

not because a language barrier impeded his understanding. This conclusion is supported by Mr. Fall's own testimony during the evidentiary hearings.

**IT IS THEREFORE ORDERED THAT:**

1. The Motion to Withdraw Guilty Plea (Doc. #19) filed by Defendant, Mohamed Fall, is hereby DENIED; and

2. A sentencing hearing will be scheduled.


November 21, 2012

    s/Sharon L. Ovington    
Sharon L. Ovington
United States Magistrate Judge
